## HEIRS OF FULTON *vs.* ADMINISTRATOR OF CURTIS'S ESTATE.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF RAPIDES.

A creditor who imputes a payment to a particular debt in the lifetime of the debtor with his assent, and after his death, in enforcing his demand against the surety for the remainder, he cannot change it by imputing part of it to another debt. If the debtor wished it, or both parties consented thereto, the imputation was correctly made and must stand.

Where a vendee purchases at probate sale a tract of one hundred and forty-five arpens of land, at forty-two dollars per arpen, and the tract is ascertained actually to contain two hundred and two arpens, he cannot retain the surplus. It is not a sale *per aversionem* of an entire tract with distinct and accurate boundaries, or an enclosed field, or an island.

WESTERN DIS.
October, 1832.

FULTON'S
HEIRS
vs.
CURTIS'S AD'R.

The plaintiffs appealed from a decision of the Probate Court placing them on the tableau of Curtis's estate for      dollars, when they claim to be allowed a larger sum.

Charles Curtis, in his lifetime, became the surety of one R. H. McWaters, who made the following purchase at the probate sale of A. Fulton's estate:

"A tract of land containing 145 arpens at $42 per arpent, amounting to.......................................................$6,090.

R. H. McWATERS,
CHARLES CURTIS."

"January 25, 1819."

McWaters was the son-in-law of A. Fulton, but becoming insolvent, and having died, the balance due on this purchase was claimed of his surety. The contest arises mainly about the quantity of land purchased. This tract was sold at the sale of McWaters's succession for one hundred and fifty-two and one-half arpens, which is a larger quantity than he purchased at the sale of Fulton's estate previously. But the heirs of the latter claim the difference. The whole case was submitted on the following agreement of facts, by

*Thomas*, as counsel for the plaintiffs, and *C. F. Scott*, as counsel for the defendant:

"It is agreed that before actual survey the tract of land purchased by McWaters at the sale of Fulton's estate, contained two hundred and two arpens."

"It is agreed that at the sale of McWaters's succession one hundred and fifty-two and one-half arpens of this land was sold."

"It is agreed that under the sale to McWaters, that Fulton's heirs charged his succession with one hundred and fifty-two and one-half arpens, at the rate agreed on in the sale, being five per centum more than expressed in the *proces verbal*, but being the quantity sold at the sale of McWaters's estate."

WESTERN DIS.
October, 1832.

FULTON'S
HEIRS
. vs.
CURTIS'S AD'R

"It is agreed that at the sale of A. Fulton's estate, McWaters purchased this tract for one hundred and forty-five arpens at forty-two dollars per arpent, with Curtis his security, &c. That at same sale, McWaters bought a negro woman for one thousand five hundred and five dollars, with J. M. Sollibellas his security."

"It is agreed that the heirs of Fulton have received from McWaters, in the portion coming to his wife from Fulton's estate, five thousand dollars, and imputed it to the credit of this tract of land, &c. Now if the court shall be of opinion that part of this receipt of five thousand dollars shall be imputed to the purchase of the negro woman, it shall so decree as to do justice between the parties."

"The parties under the previous facts, submitted whether McWaters's purchase of one hundred and forty-five arpens, and the sale at his succession of one hundred and fifty-two and one-half arpens, binds him and his security for the payment of one hundred and fifty-two and one-half arpens or two hundred and two arpens? Also, whether the difference in quantity from that expressed in the sale to McWaters, gives the surety the right to have the sale rescinded? And if the surety has no right to rescind the sale, and is not bound for the whole, to whom does the surplus over what was sold to McWaters, belong? To Fulton's or McWaters's estate?"

[N. B. This cause was decided at October term, 1831, but owing to an error in calculating the sum decreed, was not made final until this term.]

MARTIN, J., delivered the opinion of the court.

On the 25th of January, 1819, at the probate sale of the estate of the plaintiffs' ancestor, McWaters purchased a tract of land, and the defendant's ancestor became his surety, and a mortgage reserved on the premises. The sale was of a tract of one hundred and forty-five arpens, at forty-two dollars per arpen, and it is admitted the tract contains actually two hundred and two arpens.

WESTERN DIS.
October, 1832.

FULTON'S
HEIRS
vs.
CURTIS'S AD'R.

At McWaters death, one hundred and fifty-two and one-half arpens of said land was sold. The plaintiffs charged the defendants with that number of arpens, although more than that expressed in the sale of the estate of the former ancestor. The sale to McWaters was made at one and two years, and with interest at ten per centum from the date, if not punctually paid.

On the same day, at the same sale, and on the same terms of credit, and with like interest, McWaters bought a slave for one thousand five hundred and five dollars.

The widow of Fulton and the plaintiffs, received from McWaters in the portion of the estate belonging to his wife, who was a coheir, five thousand dollars, which they imputed wholly to the part payment of the land. On these facts, the parties have prayed, that if in the opinion of this court, part of these five thousand dollars ought to have been imputed to the payment of the slave, we may so decree.

They have submitted to us, whether McWaters's purchase of one hundred and forty-five arpens, the sale on his death of one hundred and fifty-two and a half arpens, binds him for the payment of one hundred and forty-five, one hundred and fifty-two and a quarter arpens, or two hundred and two, the actual contents? Whether the defendants can demand a rescission of the sale, or account for this difference between the number of arpens sold and the actual contents; and if he cannot demand a rescission, and is not bound for the whole, to whose estate does the surplus land belong, Fulton's or McWaters's?

We are of opinion the appellants have no right to have the imputation set aside. They made it themselves; the debtor does not appear to have objected to it at the time nor since; he had no right to insist on its being so made; and if it be made otherwise, he might object thereto. The appellants, to have it refunded, must allege and prove facts, establishing it was illegally made, or they were in an error. If the debtor wished it, or both parties consented thereto, the imputation was correctly made, and must stand. The

A creditor
who imputes a
payment to a
particular debt
in the lifetime
of the debtor,
with his assent,
and after his
death in enfor-
cing his de-
mand against
the surety for
the remainder,

FULTON'S
HEIRS
*vs.*
CURTIS'S AD'R.

principal debtor died without making any objection to the imputation, and had it not been made, the surety might have taken means to guard against danger. McWaters, we are of opinion, purchased one hundred and forty-five arpens; his title calls for no more, and it does not appear that there was a sale *per aversionem* of an entire tract, with distinct and accurate boundaries, or an enclosed field or an island. *Innis* vs. *McCrummen,* 12 *Mar.* 428.

There appears no circumstance that could authorize the vendee to demand a rescission of the sale; it is, therefore, unnecessary to inquire into the right of the surety to do so.

The judgement of the Court of Probates is correct, except as to the allowance of a change from seven arpens and a quarter, the difference between one hundred and forty-five arpens actually bought, with the suretyship of the defendant's ancestor, and one hundred and fifty-two and a quarter arpens, sold as part of McWaters's estate, at his death. The plaintiffs, by ratifying the sale of these seven and a quarter arpens, may have acquired the right of charging the estate of McWaters, but not his surety, who cannot be bound beyond what he became surety for.

The plaintiffs are, therefore, only entitled to the price of 145 arpens at $12.................................................$6,090 00

From this, the amount of the receipt given to McWaters, is to be deducted............................. 5,000 00

$1,090 00

On which, interest is due from the 25th of January, 1819, to the 17th of March, 1829; or ten years one month and twenty-one days, at ten per centum......................................................... 1,105 12

$2,195 12

On this, a credit is to be allowed, for.............. 1,522 50

Leaving a balance of.................................... $ 672 72

*[margin note:]* he cannot change it by imputing part of it to another debt. If the debtor wished it, or both parties consented thereto, the imputation was correctly made and must stand. Where a vendee purchases at probate sale a tract of one hundred and forty-five arpens of land at forty-two dollars per arpen, and the tract is ascertained actually to contain two hundred and two arpens, he cannot retain the surplus. It is not a sale *per aversionem* of an entire tract with distinct and accurate boundaries, or an enclosed field, or an island.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the Court of Probates be annulled, avoided, and reversed, and that the appellants be placed on the tableau of distribution of the estate of the appellee's ancestor, for the sum of six hundred and seventy-two dollars and seventy-two cents, with interest thereon from March 17, 1829, at the rate of ten per centum a year, to be paid out of the funds of that estate as surety of McWaters, with the benefit of a previous discussion of the principal's estate, the appellees paying costs in this court.