No. 4277

**Second Circuit**

——

HILL v. MAGUIRE

——

(March 16, 1932.   Opinion and Decree.)
(May 4, 1932.   Rehearing Refused.)

——

Reynolds, Hamiter & Hendrick, of Shreveport, attorneys for plaintiff, appellant.

Herold, Cousin & Herold, of Shreveport, attorneys for defendant, appellee.

PALMER, J. This is an action to recover damages in the sum of $375 for an alleged breach of contract to sell real estate. Plaintiff alleges that on December 13, 1928, she entered into a written contract with defendant for the purchase of lot 8 of Olive and Gilbert streets subdivision in the city of Shreveport for a consideration of $2,500; that the property in question was the separate property of defendant, and that she was purchasing with her separate and paraphernal funds; that $250 was paid defendant, through her duly authorized agent, H. S. Lonergan Realty Company, Incorporated, when the contract of sale was signed, and which amount has not been returned to her; and that the balance of the purchase price was to be paid when the transfer of the property was made.

Plaintiff alleges that she offered to accept title to said property and pay the balance due on the purchase price and demanded that the contract be carried into effect; that defendant refused to comply with her demands, but instead, on January 16, 1929, conveyed the lot in question to another person. She alleges that, acting upon this contract, she had plans and specifications drawn for the building of a dwelling and improvements on this property at a cost of $100, and that these plans and specifications could only be used on this particular lot, and that they have been made useless by defendant's refusal to transfer to her the title to said property. She further alleges that she paid the sum of $25 for an attorney's examination of the title to this property.

Defendant denies owing the indebtedness sued on. She admits signing the document attached to plaintiff's petition, but charges that the instrument does not contain the true agreement she entered into with plaintiff, and that she is not bound thereby. Defendant alleges that she was never put in legal default by plaintiff, and specifically pleads, as a bar to plaintiff's demands, want of legal tender of the cash price called for by the alleged contract, within the time specified.

In the alternative, defendant alleges that the real contract between her and plaintiff, and the circumstances under which it was executed, are as follows:

(a) That the same agent of the real estate company who presented plaintiff to her as a party desiring to purchase this lot a short time before also presented to her as a party desiring to purchase this same lot one Walter F. Hill; that, before she would enter upon negotiations with Hill, she required of him to know what character of improvements he contemplated erecting upon the property, and, upon being told that he intended to construct an apartment house thereon, she refused to sell him the property, although he offered her the price she was asking for it.

(b) That the following day this same real estate agent advised her he had another client, Mrs. Bessie Bryant Landrum, who wanted to purchase this same lot; that she was assured by both the said real estate agent and the said Mrs. Landrum that Mrs. Landrum wanted this lot for the purpose of erecting thereon a one-family residence; that she (defendant) informed both Mrs. Landrum and the said real estate agent that under no circumstances would she sell this lot unless the purchaser agreed to use it for such purpose.

(c) That on the night of December 13, 1928, the said real estate agent brought out to her home the alleged contract of sale, and that, upon again being assured that

the said Mrs. Landrum desired said lot for the erection thereon of a one-family residence, and that the negotiations then being conducted were in no way connected with the prior negotiations with the said Walter F. Hill, after glancing over the contract, she signed it without noticing that the agreement, well understood by the said Mrs. Landrum, said real estate agent and defendant, that the lot in question was to be used for no other purpose than the erection of a one-family residence thereon, was not in fact included in the said draft of the agreement.

(d) That she subsequently learned that the said Mrs. Landrum and the said Walter F. Hill had become married, and also learned that they were planning to erect an apartment house on this lot.

(e) That plaintiff never put her in default, and never made her any legal tender of the purchase price of the property under the real agreement, as outlined by defendant, but, to the contrary, refused to accept the property under said true agreement.

She further alleges that, under the circumstances as outlined by her, she is entitled to have the alleged contract evidenced by the document attached to plaintiff's petition reformed so as to conform to the true intention and agreement of both parties thereto, and including therein the restriction that the said lot could be used for no other purpose than the erection thereon of a one-family residence, and then hold that plaintiff has breached the contract as so reformed, and hence cannot recover herein.

Defendant then alleges that there was a conspiracy entered into by and between said real estate agent, said Walter F. Hill and plaintiff, for the purpose of securing from her, by subterfuge and deceit, as outlined by her, the said lot for the erection by the said Hill and/or his wife of an apartment house thereon; and that plaintiff, being a party thereto, has no right to recover by virtue thereof.

The lower court rendered judgment in favor of defendant, rejecting plaintiff's demands at her cost. From that judgment, plaintiff prosecutes this appeal.

Plaintiff rests her case upon proof and filing of the contract of sale attached to her petition, and upon proof of the cost of the plans and specifications she had drawn for a building she expected to erect upon this lot, in the sum of $100 and upon proof of the attorney's fees she paid for the examination of the title, in the sum of $25, and upon proof that she deposited with H. S. Lonergan Realty Company, Incorporated, the sum of $250, as per the terms of the contract, as part payment of the purchase price.

Plaintiff's proof on the question of putting the defendant in default and of making a legal tender of the balance of the consideration consisted of her testimony alone to the effect that she and the real estate agent, with Mr. Hill and two other parties, went out to the home of defendant, but failed to find her, so Mr. Hill went back to the sanitarium, and she and the other parties went to the office of Mr. Maguire, husband of defendant; that she was accompanied into the office by the said real estate agent, the other parties remaining on the outside; that she offered to pay Mr. Maguire the balance of the purchase price, and that he refused to accept it; said he explained that he understood that plaintiff intended to erect an apartment house on the property and that he refused to execute deed to it.

Plaintiff does not claim that she ever tendered to defendant herself the balance

of the purchase price, nor does she claim she ever tendered her a deed to sign, conveying title to the property, although she alleges that the property in question was the separate property of defendant. She appears to take the position that she was relieved of that obligation when defendant conveyed the property to another party, without first tendering a deed to her. Plaintiff did prove that on January 16, 1929, defendant transferred this lot to another party, and that she did not receive the opinion on the title from her attorney until January 9, 1929, and that, under the contract, she had fifteen days after the rendition of her attorney's opinion in which to take title.

Ordinarily, an obligor must be put in moro, as a condition precedent to the recovery of damages for the passive violation of a contract. Civ. Code, art. 1912, and authorities there cited. We shall withhold any expression of opinion on this point at this time. Defendant, after asking for a revision of the contract to conform to the true agreement, as she alleges it to be, again pleads this same defense; so, if the question is passed on at all, such should be done after we consider the admissibility of the parol evidence and, if admitted, what bearing it has upon a final decision in the case.

This brings us to a consideration of the objection of plaintiff to the admissibility of the parol evidence offered by defendant. When this testimony was offered, plaintiff objected to it on the grounds that parol evidence cannot be used to vary or contradict a written contract. The trial court admitted the evidence, subject to the objection. The objection and ruling of the court were made general to all such testimony throughout the trial.

True enough, the rule is well settled that parol evidence cannot be received to vary or contradict a written instrument, but it is also equally as well settled that under proper allegations of fraud and error such evidence may be introduced to show the true nature of the contract the parties thereto really intended to enter into.

"Where fraud or error is charged, parol evidence is admissible to contradict a written act." Louisiana Digest, vol. 3, par. 252, and authorities cited.

"The admission of parol evidence to defeat written contracts by proof of error or fraud is a rule of universal jurisprudence; they are susceptible of such proof only; and, under proper allegations, may be shown by the parties to an act, whether public or private, whose true stipulations may be established." Louisiana Digest, vol. 3, Evidence, par. 252, and authorities cited.

In Atlas Oil Co. v. Logan et al., 166 La. 28, 116 So. 582, we find a case where plaintiff induced defendant to grant them an oil lease on certain property already under lease to other parties. Defendant first refused to grant the lease, but, upon assurances of plaintiff that they would take all the risk of annulling the other lease on the property, and that there would be no "come back" on defendant, they granted plaintiff a lease on the property. Plaintiff's efforts to annul the first lease were unsuccessful, so they sued defendant to recover the $4,500 paid for the lease defendant granted plaintiff. The lease itself made no mention of the aforesaid agreement of plaintiff assuming all risk of annulling the first lease and that there would be no "come back" against defendant, so the Supreme Court held that parol evidence in that case was admissible to show that through inadvertence this stipulation was omitted from the contract. In passing upon the point, the court reaffirmed the settled principle covering the admissibility

of parol evidence to vary a written contract, under proper allegations of fraud .or error, and quoted from Armstrong v. Armstrong, 36 Ann. 549; wherein this principle is stated as follows:

"It is a rule of universal jurisprudence that parol evidence will be heard to show error in a contract; it is susceptible of such proof only, and under proper allegations, parties will be heard to show that a valid existing instrument, from accident or error does not contain the real intention and meaning of the parties.

"The rule has been frequently considered by this Court, and has been invariably applied in that sense."

The authorities sustaining this view are practically unanimous, and are certainly too numerous to even list here.

Plaintiff's counsel take the position that there was no fraud or error alleged by defendant, and hence the parol evidence is inadmissible and cannot be considered. We disagree with counsel in these conclusions. It is true the terms "fraud" and "error" are not specifically mentioned, but, even if they had been used, without alleging the facts which constitute such fraud or error, such allegations would have been mere conclusions of law and insufficient for the reception of proof in substantiation thereof; but in her pleadings defendant sets out in detail and at length a statement of facts which, if true, undoubtedly discloses a case of fraud on the part of plaintiff in securing the execution of the contract as written and a case of error on the part of defendant in signing the contract without the reservation as to the character of improvements that could be erected on the property in question. It is not necessary, in charging fraud or error, that these very words be employed. Oftentimes a pleader in charging fraud purposely avoids the express use of such a harsh word.

"Fraud has been defined to be any cunning deception or artifice used to circumvent, cheat, or deceive another." Words & Phrases, First Series, Vol. 3, p. 2943, and other authorities there cited.

"It is not necessary that the pleading allege fraud in direct terms; the charge may be sufficiently made by stating the facts from which fraud is necessarily implied. The term 'fraud' need not be used in the pleadings if facts are averred which show fraud as a conclusion of law." Corpus Juris, vol. 27, p. 30.

We can hardly conceive of a more perfect case of fraud being alleged than is set forth in defendant's alternative demand, which we have already stated somewhat at length in summarizing defendant's pleadings; and then, after reciting at considerable length the alleged facts, which, if true, disclose a strong case of fraud on the part of plaintiff, defendant sums them up with the direct charge, "that there was a conspiracy entered into between Waltman (real estate agent), said Walter F. Hill and said Mrs. Bessie Bryant Landrum, for the purpose of securing by subterfuge and deceit, as above outlined, the said lot from respondent for the erection by said Hill and/or his wife of an apartment house thereon; and that plaintiff, being a party thereto, has no right to recover by virtue thereof."

We conclude that the parol evidence offered by defendant and admitted, subject to plaintiff's objections, is clearly admissible, under the allegations of the answer, and must be weighed and considered in determining the issues in this case.

## THE FACTS

There is very little dispute about the facts. Admittedly, defendant did not want

an apartment house erected upon the lot in question. As we see it, she tried hard to make that fact known to any who sought to buy this property.

There is no dispute that W. L. Waltman, an agent of a real estate company in Shreveport, sought to buy this property for Walter F. Hill, who soon thereafter became the husband of the plaintiff in this case, and that defendant, after having ascertained that Mr. Hill wanted the property for the purpose of erecting thereon an apartment house, refused to sell it to him, although Hill offered her the price she was asking for the property.

Plaintiff admits that she was familiar with the facts whereby Mr. Hill had tried to buy this lot and defendant had refused to sell it to him, because Hill wanted the property for the purpose of building thereon an apartment house and defendant refused to sell it to him to be used for that purpose.

"Q. Now prior to the time that you came in contact with Mr. Waltman, Mr. Waltman and Mr. Hill had been figuring over the sale of that property, had they not?
"A. Yes.
"Q. You were acquainted with the negotiations between Mr. Waltman and Mr. Hill with reference to the purchase of this same lot, were you not?
"A. Well, yes, I believe that Mr. Hill told me that Mr. Waltman had been trying to sell him the lot.
"Q. And Mr. Hill had been wanting to buy that lot?
"A. Yes.
"Q. And Mrs. Maguire refused to sell it to him because he would not agree that it would not be used for an apartment house. Is that not correct?
"A. Yes."

Plaintiff admits she told the real estate man she wanted the lot for the purpose of erecting thereon a home.

"Q. Then Mr. Waltman came to you and what did he say to you?
"A. He told me he understood I was going to build a home and he wanted to show me that lot, and he took me out there and showed it to me.
"Q. Did you tell him you were going to build a home on it?
"A. Yes, sir.
"Q. You bought it for the purpose of building a home on it?
"A. I did."

Plaintiff admits she had a conversation over the phone with defendant while these negotiations were pending, and that defendant told her that she had refused to sell this lot to a man who wanted it for the purpose of building thereon an apartment house.

"Q. You knew that Mrs. Maguire objected to having an apartment house on the property?
"A. She told me that day she refused to sell it.
"Q. Your idea was that if you built an apartment house and lived in one of the apartments, that would satisfy the objection?
"A. Yes."

Walter F. Hill admitted that, just before he and plaintiff were married, he tried to buy this lot for the purpose of building an apartment house thereon, and that defendant refused to sell it to him to be used for that purpose.

"Q. And the owner of that property refused to sell it to you because she did not want an apartment house on it, is that correct?
"A. That is what Mr. Waltman told me.
"Q. Mr. Waltman came back and reported that to you?
"A. Yes, sir.
"Q. Now at that time that was very shortly before you married Mrs. Hill, was it not?
"A. Yes.
"Q. When was it that Mrs. Maguire, or, whcever it was that owned the property,

notified you through Mr. Waltman that she would not sell the lot because she did not want it used for an apartment house?

"A. I don't know what date that was because Mr. Waltman and I were dealing on several different pieces of property in different parts of town. I don't know what date that was.

"Q. Was it as much as two or three days before this trade with Mrs. Maguire?

"A. No, I think it was more than that.

"Q. You do not know though, do you?

"A. No, I don't know because I was figuring with Mr. Waltman on a good deal of property."

He admits that he took some part in his wife's negotiations for the purchase of this lot, acting as her agent.

"Q. Did you have anything to do with the carrying out of the transaction?

"A. Carrying out of it?

"Q. Yes. Did you act as agent in any way for your wife?

"A. Yes.

"Q. You are familiar with the transaction?

"A. Yes, sir."

Thus we find that Walter F. Hill was unable to buy this property to be used for the erection of an apartment house thereon, and, within a few days, having married the plaintiff in the meantime, he assists her in trying to buy it for the very same purpose and acts as her agent in what he does in her behalf. We also find plaintiff, from her own admissions, knew at that time—having gained her information from Mr. Hill himself—that defendant had refused to sell to Mr. Hill this same lot for the purpose of erecting thereon an apartment house, and, furthermore, plaintiff knew defendant was still holding to the same views and had told her she would not sell it to any one who would erect such a structure thereon.

Mrs. Hill, formerly Mrs. Bessie Bryant Landrum, says she was to pay for these properties with her own separate funds which she obtained from her first husband's estate. Mr. Hill testified that Mrs. Hill was financing this purchase with her own separate funds. We therefore have this situation:

Mr. Hill, just a few days before he marries Mrs. Landrum, tries to buy this lot for the purpose of erecting thereon a rather costly apartment house, and, failing in his efforts, becomes interested in assisting Mrs. Landrum in buying the same property for the same purpose. Mrs. Hill knows all about Mr. Hill's failure to acquire this property and the reasons therefor. Now, whose money was to be used in paying for this property and in building this apartment house, whether operating in the name of Mr. Hill or of Mrs. Landrum? It is most likely they had agreed to be married at the time the negotiations were carried on in Mr. Hill's name. Plaintiff is shown to have had money obtained from her first husband's estate which she desired to invest in an apartment house, and, almost immediately after Mr. Hill fails to buy in his own name, the same real estate agent, apparently with Mr. Hill's assistance, approaches defendant in behalf of Mrs. Landrum to buy the same property. This time the prospective purchaser, although intending to build an apartment house upon the property, states she wants the lot for the purpose of erecting thereon a residence. Whether Mrs. Landrum, now Mrs. Hill, intended this as a fraudulent representation is immaterial. What she said, nevertheless, was not according to her real program, for she knew at that time she intended to erect an apartment house on the lot. She may have felt that she was not deceiving defendant because she intended to live in one of the apartments, but it did deceive her. She accepted Mrs. Landrum's word that she wanted the lot on which to build a residence, and hence in good faith, having full confidence

in that statement, entered upon these negotiations.

None can doubt that defendant was doing her very best not to sell this lot to any one who would build an apartment house thereon. In her own heart, she had determined that no one could purchase it for that purpose. Likewise, it can hardly be doubted that plaintiff thoroughly understood this to be defendant's unalterable stand on that question. Certainly Messrs. Waltman and Hill also knew this to be her position.

In face of all these facts and circumstances, we find that the alleged contract was drawn without including such restrictions. Certainly defendant had no part in drafting the document. It was carried to her at her home after night on the occasion defendant signed it. At that time defendant appears to have been quite ill and says she merely glanced over it. She appears to have trusted defendant and Waltman to treat her fairly.

This evidence, fairly analyzed, convinces us that the alleged contract was incomplete or incorrect to the extent of omitting a stipulation containing this restriction; that the instrument as written is not the true agreement entered into between plaintiff and defendant, and should be considered as revised and reformed so as to include that restriction. When it is so considered, then it is clear that plaintiff never put defendant in default, nor did she offer the consideration for a deed with such a stipulation in it. In view of the manner in which defendant was treated, we think she was perfectly justifiable in totally disregarding these negotiations and in selling the property to another at her pleasure.

Plaintiff claims she should recover the $250 deposited with the real estate company from defendant, on the theory that the real estate company was the defendant's agent, and that payment to the agent was payment to the principal. The clause in the contract dealing with this deposit does not bear out this contention. It specified: "It is agreed to by parties to this contract that the money herein acknowledged shall be held in trust by said H. S. Lonergan Realty Company, Inc., Agents, until after transfer of property is made."

As holders of this money, H. S. Lonergan Realty Company, Incorporated, certainly acted as agents of both parties. Plaintiff was unwilling for this money to be delivered to defendant until she received title to the lot, so it was thus deposited, and the holder became the agent of both parties in connection therewith. If title to the property never passed, defendant was not to get the money. It was thus held to protect plaintiff, so, as the condition on which defendant could take possession of the money never happened, she never became bound therefor. It is the real estate company, and not defendant, who is due to account to plaintiff for this deposit.

As to the items of $100 and $25 paid by plaintiff for the plans and specifications and the attorney's opinion, respectively, defendant cannot be held liable therefor, because the whole fault for the failure of a successful termination of the negotiations between plaintiff and defendant is chargeable to plaintiff, due to her efforts to thwart the real intention of the parties in forcing a contract not representative of the true agreement between them.

We think the judgment of the lower court is correct, and it is accordingly affirmed; plaintiff-appellant to pay all cost of appeal.