LOTTINGER,’Judge.
 The Trial Judge rendered written reasons for judgment which so adequately dispose of the issues presented both factual and legal that we adopt them as our own. They are as follows:
“This is a suit on behalf of plaintiff, M. L. Harvey, against the defendant, Elizabeth R. Pierce, for specific performance of a contract' for the sale of real estate and damages for the breach of the contract. ' It is alleged that defendant, Elizabeth Pierce, is the owner of approximately 106 acres of land in East Feliciana Parish. It is alleged by the plaintiff, that he, agreed to purchase said property from defendant, who was acting through her duly authorized agent and attorney in fact, Thomas S; Williams, her said agent having beem authorized to act for and on behalf of defendant, and said T06 acres'of lfind having been listed with her said agent, Williams, by virtue of an instrument signed, by defendant on July 14, 1960, hereinafter referred to as the ‘listing’. Petitioner alleges that, under authority of said listing and power of attorney, plaintiff and the said Thomas S. Williams, alleged agent and attorney in fact of defendant, did, on the 15th day of July, 1960, sign an agreement to purchase said property at $35.00 per acre. Plaintiff further alleges that he paid the said Thomas S. Williams, defendant’s, agent, $250.00 cash to apply toward the purchase price and,' on August 8, 1960, the date of the filing of this suit, deposit in the registry of the Court the sum. of $3,490.45, the balance of the purchase price, which plaintiff alleges to he an indication of his readiness and willingness to perform his part of the contract and agreement. Petitioner alleges that the said Elizabeth Pierce, defendant, refused to accept the $250.00 cash tendered her by Thomas S. Williams and refused to comply with said contract she had. signed and thereby breached said contract. Plaintiff prays for a judgment, ordering the specific performance on the part of defendant on the contract allegedly signed by her, and asks for damages against defendant in the amount of '$2,746.82. Petitioner further alleges that, despite the contract listing said property for sale with her agent, Thomas. S. Williams, and authorizing her said agent to sell said property,' that she' did, on the 28th day of July, 1960, sign and execute an agreement to purchase said property with one Aliene E. Bennett for the sum of $40.00 per .acre, for such interest as the said Elizabeth Pierce might own in said property.
“Defendant answer plaintiff’s suit, denying the 12' articles in plaintiff's petition .and further alleging in defendant’s answer that defendant is more than 80 yéars old, is in feeble and failing health, and is possessed of little education, be *923 ing practically illiterate;-alleging further that the said Thomas S. Williams, -who was, at that time, unknown to defendant, came to defendant’s house -while she was alone, representing to defendant that he was a real estate broker desirous of listing said property for sale. Defendant alleges that she informed the said Williams she did not wish to sell her property and she did not desire to list the property with him, nor to retain his services in any manner. Defendant further alleges that the said Williams pretended to acquiesce in defendant’s statement that she did not desire his services, but the said Williams stated to her that he would like to make a note of her name for future reference in his files; that he handed to defendant a piece of paper with no writing on it, or a blank form, and requested defendant to write her name, merely so he would have a record of having called on her for future reference; that the said Williams did not tell defendant he was procuring her signature on a listing agreement but, on the contrary, led her to believe before tendering the paper to her that he had acquiesced in her refusal to list the property to him and she believed she was merely furnishing her name to him for reference purposes. Defendant alleges that she did not read the document which bears her signature; that she does not have enough education to read and understand it, and the said Williams did not read it to her, nor did he fill in any of the blanks in her presence, but, on the contrary, represented to her that it was merely a convenient piece of paper for her to write her name on so he could refer it to later. Defendant alleges she never, at any time, intended to list the subject property for sale with Thomas S. Williams and she never, at any time, • understood that the said Williams intended for her signature to have the purpose and effect of listing, the' property with him; defendant further alleging that the said Thomas S. Williams was never, at any time, the agent of defendant, and, therefore, any purported agreement to sell made by the said Williams -with plaintiff is totally null, void and of no effect. On these issues, the case went to trial on its merits.
“The testimony was not transcribed, counsel relying on the notes made by the trial Judge. The matter was submitted to the Court, counsel to furnish briefs.
“The facts brought on the trial of this case show the following:
“Mr. Williams testified that, previous to this transaction, perhaps a year before, he had received a letter from defendant, Elizabeth Pierce, to the effect that she wanted to sell her property. This letter was not offered in evidence, Mr. Williams, stating that he had misplaced it. Mr. Williams testified that he got defendant’s address from the Sheriff’s Office and wrote Elizabeth a letter, to which he did not receive a reply. He stated he got a description of the property and’ went to see defendant at her home on July 14, 1960, and that he was accompanied by his son, Tommy Williams,- who at this time’ was 13 years of age. He said he told defendant he wanted to sell her property and wanted her to list it with him; that he filled out the form there in her presence while he was talking to her and handed it to her, and that she went and got her glasses and read it. Mr. Williams testified he did not read the document to defendant, nor did he explain it to her, but that she- read it for herself; that they discussed the price and agreed on $30.00 per acre. Mr. Williams testified at one time’ that his son, Tommy, was sitting on the front steps at defendant’s home. However,'- Tommy Williams-’' signature appears on this purported -listing .as a witness. Mr. Williams testified that he had seen this property and that' when he got back to *924 his office, he looked it up on his map, and, on cross examination, he admitted that he knew Mr. Aliene Bennett had property around defendant’s property. Mr. Williams testified that he was in his store a day or so later and the plaintiff in this suit, Mr. M. L. Harvey, came to his store and that he told Mr. Harvey about the property and Mr. Harvey said he would buy it for $35.00 an acre. Mr. Williams stated he had some blank forms of purchase in his briefcase, that he went and got one and filled it out and that Mr. Harvey and he signed it on the 15th day of July, 1960. He stated Mr. Harvey paid him $250.00 cash to apply towards the purchase price and that the next day he, Williams, went to defendant’s home and took the purchase agreement with him that he and Mr. Harvey had signed and asked defendant to also sign this purchase agreement and, at the same time, offered her the $250.00 cash to apply to the sale, which Mr. Harvey had given him. Mr. Williams testified that defendant refused to accept the $250.00 and refused to sign the purchase agreement. He testified that, although he held a power of attorney from defendant to sell her property and had authority to act as her agent, that he, nevertheless, wanted her signature to the purchase agreement with Mr. Harvey. Later on, this suit was filed and the balance of the alleged purchase price to be paid by Mr. Harvey was deposited in the registry of the Court.
“Defendant, Elizabeth Pierce, testified that Mr. Williams came to her house and told her he wanted to buy her land, but defendant told him she did not want to sell her land and that she could not sell it because the ‘heirs might come in on me’. Defendant testified that she could not remember any writing on the paper she signed. She testified it was a plain white sheet of paper, to which she signed her name, and that this was the only time she ever signed her name on a paper for Mr. Williams. Defendant testified that Mr. Williams-told her ‘put it right here’. She further-testified that when she refused to sign: the paper, selling her property, Mr. Williams told her to sign her name to-it so that he would have her name in his-office for future reference, and that this is the reason she signed her name-to the document; that she did not think she was signing a paper to sell her property; nor to employ Mr. Williams-as her agent. She further testified there was no writing or printing on-the paper. Defendant testified that Mr. Williams came back to her house later and brought some money and she told him she could not take the money. Mr. Williams told her the money was for-selling her place and she told him, ‘I hand’t sold no place, and I told him I wasn’t going to sign no more’. Defendant testified she does not know who-Harvey is and that she is not willing to-sell her place to Mr. Harvey, because she was going to sell it to Mr. Bennett. She testified that Mr. Bennett had already been to see her about selling-her place to him and that she had told him if she ever sold it, she would sell* it to Mr. Bennett, and that Mr. Bennett had been there before Mr. Williams came. Defendant testified that she went to Mr. Lane’s office with her sister, Phyllis Ward, and that she was-willing to sell the property to Mr. Bennett, and sign an agreement to that effect, for $40.00 per acre, and that she-is still willing to sell the property to-Mr. Bennett, but not to Mr. Harvey. Both Mr. Williams and defendant testified that no one was present except the two of them when defendant signed the document, except that Mr. Williams’ son, Tommy, was out on the front porch. It will be noted that Tommy Williams, minor child of Mr. Thomas S. Williams, who signed the document as a witness, was not present or called in Court as a witness. Mr. Williams testified at considerable *925 length about correspondence he had with the Welfare Department in reference to this transaction, which the Court believes to be immaterial and irrelevant.
“Mr. Harvey was called as a witness and testified substantially to the facts above stated, except that, under cross examination, in answer to counsel’s question as to whether he was willing to accept the property, at that very time, that is, at the time of the trial, even though he had heard testimony that perhaps defendant did not own all the interest in it, if proffered a deed by defendant, would he authorize the Clerk of Court to pay defendant the money deposited in the Court’s registry, he stated that he would do so if defendant would give him a warranty deed and that he would pay her $40.00 per acre for such interest as she might have. In other words, he conditioned his offer to accept the property at that time, in its then present condition. It might be noted by the Court, however, that title to this property is not the issue in this lawsuit.
“Mr. Bennett testified he had known Elizabeth Pierce a long time, many years, and she had told him she did not want to sell the property at that time, but if she ever decided to sell it, she would sell it to him, Mr. Bennett, and that he accepted her promise and did not bother her any more, until she came to see him, at which time he signed an agreement to purchase her property at the price of $40.00 per acre, for such interest as she might have, after title to the property had been approved by his attorney.
“Defendant, in her answer, alleges fraud and error on the part of Mr. Thomas S. Williams in securing defendant’s signature to the document herein termed a ‘listing’ and the power of attorney to Thomas S. Williams incorporated into said document dated July 14, 1960. Defendant alleges the acts committed by Mr. Williams and the act of acquiescence on the part of defendant which constitute, or did constitute, fraud, if proven. Under these allegations and as the trial Court interprets the law and jurisprudence of the State, the Court permitted parol testimony.
“Hill v. Maguire, [19 La.App. 798] 140 So. [169] 172:
“ ‘True enough, the rule is well settled that parol evidence cannot be received to vary or contradict a written instrument, but it is equally as well settled' that under proper allegations of fraud and error such evidence may be introduced to show the true nature of the contract the parties thereto really intended to enter into.
“ ‘Where fraud or error is charged pa-rol evidence is admissible to contradict a written act.’ Louisiana Digest, Vol. 3, Paragraph 252, and authorities cited,
“ ‘It is a rule of universal jurisprudence that parol evidence will be heard to show error in a contract; it is susceptible of such proof only, and under proper allegations, parties will be heard to* show that a valid existing instrument,, from accident or error does not contain the real intention and meaning of the parties.
“ ‘The rule has been frequently considered by this Court, and has been invariable applied in that sense.’
“ ‘It is true the terms “fraud” and “error” are not specifically mentioned, but,, even if they had been used, without alleging the facts which constitute such fraud or error, such allegations would have been mere conclusions of law and insufficient for the reception of proof in substantiation thereof.’
“ ‘Fraud has been defined to be any cunning deception or artifice used to circumvent, cheat, or deceive another.’ *926 Words & Phrases, First Series, Vol. 3, P. 2943, and other authorities’ there cited.
“ ‘It is not necessary that the pleading allege fraud in direct terms; the charge may be sufficiently made by stating the facts from which fraud is necessarily implied. The term “fraud” need not be used in the pleadings if facts are averred which show fraud as a conclusion of law.’ Corpus Juris, Vol. 27, p. 30.
“Although Mr. Harvey is plaintiff in this suit and, naturally, interested, he, nevertheless, is somewhat in the position of a third party. This lawsuit really grows out of the relationship between Thomas S. Williams and defendant, Elizabeth Pierce. Mr. Williams is a real estate broker in East Feliciana Parish and the defendant is an 80 year old, illiterate Negro woman. Mr. Williams testified that when he handed the listing and form to defendant for her to sign, that the blanks in the form had already been filled out by him while he was talking to defendant. Defendant testified that it was a blank piece of paper that she signed. Mr. Williams testified that defendant got her glasses and read it, but he further admitted that he did not read the document to defendant, nor did he explain it to her.
“There are several facts surrounding this transaction and following it, which, to the Court, indicate that defendant did not know what she was signing. For instance, the next day,. Mr. Williams brought defendant the purchase agreement which he, Williams, and plaintiff in this suit, M. L. Harvey, had already signed, and requested defendant to sign it, which she refused to do. She also refused to accept the $250.00 Mr. Williams offered her toward the purchase price. If defendant, the day before, had intended to authorize Mr. Williams to sell her property at $30.00 per acre, why did ‘ she,' the’ next day, refuse to accept the price and-refuse'to sign the purchase agreement to Mr. Harvey? This indicates very strongly and very clearly to the Court that she did not intend to sell her property in the first place, and that she did not know what she was signing when she signed her name to the listing agreement. She, herself, reiterated several times on the witness stand that after she refused to sign the agreement to sell her property, that Mr.. Williams told her ‘put it right here’, meaning to sign her name to the document, for the purpose of having her name on file in his office. She testified that Mr. Williams asked her for her name and again told her ‘put it right here’, and that she could not remember any writing on the paper she signed, although she admits her signature, and that when' offered the money, she told him she had not sold him her place. The Court further takes notice of the fact that Mr. Williams’ minor son, Tommy Williams, was with him at this time and signed the document as a witness, but this young man was not called as a witness and was not present at the trial. He was certainly available, because he was Mr. Williams’ son. There is every legal grounds for assuming that he was not called for the reason that-his testimony would have been adverse to- the interests of plaintiff. Defendant repeated several times on the witness stand that she could not have sold her property if she wanted to for reason that the ‘heirs might come on’ her, indicating that she, at least, believed she did not own all the interest in the property. To substantiate this . fact, when defendant filed the purchase agreement to Mr. Bennett on July 28, I960, her sister, Phyllis Ward, went with her’and also signed the purchase agreement. '
“After considering-all the facts surrounding this transaction- and studying the record' and' the briefs, and after having read the citations supplied -b$ *927 counsel and after having thought seriously over the matter, the Court is convinced that defendant, due to her extreme age and illiteracy and physical and mental frailties, did not know what she was signing and certainly did not intend to sign an instrument selling her property to Mr. Harvey or Mr. Williams or anyone else, and that she was induced to do so by error, and that said document is without force and effect, because of error.
“For the reasons assigned, plaintiff’s suit is dismissed at plaintiff’s costs.”
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.