BARNETTE, Judge.
This is a suit by The Office Center, Inc., against Edwin Tanenbaum and Dr. Edgar C. Cohen for $4,500 arising out of an alleged contract for the sale and purchase of certain real property in Jefferson Parish. The plaintiff charges the defendants with default in refusing acceptance of the proffered deed in accordance with the terms of the contract. The sum of $4,500, representing 10 percent of the contract price which defendants had deposited with plaintiff’s agent, Medallion Realty, Inc., was declared *742 forfeited upon defendants’ refusal to accept the deed of conveyance tendered by plaintiff. The $4,500 which plaintiff seeks to recover in this suit represents the realtor’s commission which plaintiff alleges is due and owing by defendants over and above the $4,500 forfeited, under the terms of the contract.
The defendants answered denying their indebtedness to plaintiff and alleged that plaintiff did not own the property it had agreed to sell and that the contract was null and void for failure of a meeting of the minds as to the identical land to be conveyed. Defendants alleged certain discrepancies in the measurements of the property and that the contract of sale and purchase contained a potestative condition They also denied that the contract provided for the payment of a real estate commission.
Defendants assumed the position of third-party plaintiffs and named Medallion Realty, Inc., third-party defendant from whom they seek return of the $4,500 they deposited with Medallion upon execution of the contract.
The trial court granted judgment in favor of plaintiff against the defendants in solido in the sum of $4,500 “ * * * now on deposit with Medallion Realty, Inc. * * * ” which was in effect a confirmation of the forfeiture of the deposit. The judgment further provided for judgment in favor of Medallion Realty, Inc., third-party defendant, rejecting the third-party demands of Tanenbaum and Cohen.
The plaintiff perfected a devolutive appeal insofar as the judgment in effect denies plaintiff’s demand for the additional sum of $4,500 for realtor’s commission. The defendants answered the appeal in this court seeking reversal of the judgment in plaintiff’s favor against them and also seeking reversal of the judgment denying their third-party demands against Medallion Realty, Inc.
The defendants were desirous of purchasing a commercial site for investment purposes. They contacted Paul F. Das-tugue, representative of Medallion Realty, Inc., and after looking at several pieces of property expressed interest in certain vacant and unimproved lots bounded on two sides by Sanford Street and the right-of-way of Interstate Highway 10-Clearview Parkway interchange. At the point in question Sanford Street connects with but does not intersect the lateral service road of the Interstate-Clearview Parkway interchange, thus forming a corner. It is approximately in this corner that the lots in question are located. Dastugue explained to Tanenbaum and Cohen that these were three separate lots or portions thereof which his firm was working on to consolidate into one parcel or commercial plot, whereupon defendants told him if the assembly of the parcels into one plot could be worked out they would be interested in buying. Dastugue said he would refer the matter to Tony Lopez, Medallion’s commercial manager. A week or ten days later, on Saturday, April 16, 1966, the defendants met Tony Lopez, vice president of Medallion Realty, Inc., in charge of its land department, at the site of the lots in question for an inspection with a view of making an offer to purchase.
Sanford Street and the lateral service road of Clearview Parkway-Interstate 10 interchange are both paved with a continuous curb clearly marking the streets. At the point in question the highway right-of-way line cuts across lots described as 15, 14, and 13 of Square No. 31. According to the undisputed testimony of John E. Walker, Civil Engineer, and the survey map prepared by him June 8, 1966, and filed in evidence, a triangular portion of Lot 15 measuring 9.25 feet on Sanford Street, 24.-01 feet on the service road right-of-way and 24.88 feet on the inside adj acent to Lot 14, lies immediately in the corner of Sanford Street and the service road. The service road and highway right-of-way continues as an angle across Lots 14 and 13 but does not touch Lot 12. The plot in question is all of Lot 12 and portions of *743 Lots 13 and 14 not taken for the highway right-of-way. We reproduce here a copy of Walker’s survey for clarification of this opinion.

*744 According to Walker’s survey, the lots were laid out in the subdivision with a frontage of 50 feet each on Sanford Street with the lateral boundaries running back at an angle a distance of 156.16 feet, thus each being a parallelogram in shape. Therefore the plot in question is irregular in shape measuring 150 feet on Sanford Street, 24.88 feet' along the triangular parcel of Lot 15, then 132.43 feet along the highway right-of-way cutting off portions of Lots 14 and 13, thence 25.05 feet across the rear of Lot 13 continuing 50 feet across the rear of Lot 12, thence 156.16 feet to Sanford Street. The principal frontage of the plot is now on the service road, and because it follows the contour of the right-of-way, it is not a perfectly straight line.
Except for the clearly defined street boundaries, there were no markers, stakes, fences, or other indications of the lot boundaries. Lopez had the approximate lineal boundary measurements, one of which was “about” 165 feet on the Clear-view Parkway service road side. In order to get a visual indication of the size of the plot and the line on the Clearview side, Lopez stationed Tanenbaum at the corner of Sanford Street and the service road and from that point stepped off an estimated distance of 165 feet along the service road curbing. Dr. Cohen walked along with Lopez.
The parties then went to Medallion’s office where they were joined by Dastugue. The property was represented to Tanen-baum and Cohen as being Lots 14, 13, and 12 “ * * * measuring about 165 x 150 x 74 x 155.55 or as per title.” No maps were displayed. Relying on this description and the visual inspection of the property pointed out to them by Lopez, defendants made an offer to purchase for $45,000. A contract was prepared and signed by defendants subject to acceptance by plaintiff. The pertinent part of the contract entitled “Agreement to Purchase or Sell” is as follows:
“We offer and agree to purchase Lots 14, 13, 12, Square 31 Unit 2 Sec. A Pontchartrain Gardens Jefferson Parish, La. Property zoned C-2 Commercial. On grounds measuring about 165 x 150 x 74 x 155.55 or as per title.
Property sold and purchased subject to all title and zoning restrictions on record, or by laws or ordinances for. the sum of Forty-Five Thousand Dollars ($45,000.-00) on the terms of all cash.

Act of sale, closing costs and prepaid items at expense of purchaser to be passed before Purchaser[’s] Notary, on or prior to June 16, 1966, provided that if bona fide curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of act of sale by thirty days.
Upon acceptance of this offer, vendor and purchaser shall be bound by all its terms and conditions and purchaser becomes obligated to deposit with seller’s agent immediately 10% of the purchase price amounting to $4500.00.
******
The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof.
In the event the seller fails to comply with this agreement within the time specified or for any other reason, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.
In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.
In the event the deposit is forfeited, the commission shall be paid out of this *745 deposit, reserving to the seller the right to proceed against the purchaser for the recovery of the amount of the cofcnmission.
If this offer is accepted, seller agrees to pay the agent’s commission of which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.
Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all fees and costs incurred in enforcing collection and damages. This offer remains binding and irrevocable through 4-19-66 Noon.”
As stated above, the plaintiff did not have title to the lots, but Medallion was negotiating an agreement with the respective owners for sale to plaintiff. The next day, Sunday, April 17, these negotiations were completed and contracts identical in form to the above contract were signed and accepted. Plaintiff then (April 17) accepted defendants’ offer by signing the above contract. The next day, Monday, the $4,500 deposit was made by defendants.
In connection with title examination defendants engaged Walker to make the survey mentioned above. This was completed June 8, 1966. It was then that defendants learned that there was a triangular portion of Lot 15 lying immediately in the corner of Sanford Street and the Clearview Parkway service road. The survey also revealed inconsequential variations in the approximate lineal measurements on two sides and a more serious discrepancy in the measurement along the service road side of the lots. This is the principal issue which gives rise to this suit. Instead of measuring 165 feet from the corner which defendants contend was intended, the Clearview side boundary begins at Sanford Street 9.25 feet from the corner, thence 24.88 feet along the boundary line of Lots 14 and 15 to the service road right-of-way, thence along the right-of-way 132.43 feet. Thus the boundary along the service road side of the property measures a total of 157.31 feet of which only 132.43 feet abuts the service road.
The plaintiff properly notified defendants of the time and place for the consummation of the sale in accordance with the contract on June 16, 1966. On that day plaintiff took title to the lots in question from the respective owners pursuant to their contracts and were ready and able to pass title to the property described in the contract to defendants at the time designated. The defendants did not appear to take title and plaintiff declared the deposit forfeited under the terms of the contract. This suit followed to enforce the alleged agreement in the contract imposing upon the defaulting party the obligation of payment of the realtor’s commission.
With reference to the issue of discrepancy in the lineal measurement of the property along the service road, the trial judge said in his reasons for judgment:
“It should be noted that the measurements recited in the agreement are approximate and further qualified by the phrase, ‘or as per title’. The plaintiff tendered title to all of the property it owned in lots 12, 13, and 14, being the precise designation of the property to be conveyed.
During the course of the trial the defendants attempted to introduce parole testimony to establish that the motivating consideration for the agreement was the fact that the property formed the corner of Sandford Street and the right of way of Interstate Highway #10 (formerly Clearview Parkway), with a measurement along the right of way of 165 feet. Timely objection, to any parole testimony seeking to enlarge or change the terms of the agreement, was made by the plaintiff. The defendants, shortly before the last day of trial, filed a supplemental answer incorporating in its allegations the deficiency of frontage and urging the *746 failure of consideration. The court pre-termitted passing upon the defendants’ right to amend pending its determination of the admissibility of the parole testimony.
It is now of the opinion that the parole testimony offered by the defendants is inadmissible in that it seeks to show what was said during the negotiations leading to the execution of the agreement, for the obvious purpose of engrafting additional conditions or restrictive qualifications in its terms, by requiring total frontage on the right of way.
The agreement is explicit and precise in the description of the realty to be conveyed. It clearly described the property as lots 12, 13, and 14, of Square No. 31, Unit #2, Section A, Pontchartrain Garden Subdivision. A plan of resub-division embodying this property, dully approved by the Parish of Jefferson, was recorded in the conveyance records in 1954. This property was readily susceptible of identification and location, without the need to resort to parole testimony or other extraneous secondary evidence for this purpose.
There is no provision in the contract making any reference to a specific measurement of frontage on I — 10 right of way. In fact the agreement does not contain the term ‘frontage’, nor does it set forth the names of any streets or right of way. It merely identifies the property by lots, square, section and subdivision, followed by the statement that it is zoned ‘C-2 Commercial’. Under the terms of this agreement, the buyers do not have right to demand something which it does not contain, that is, frontage on the right of way, and it necessarily follows, they cannot validly refuse title because of the seller’s failure to meet their unwarranted demands. As a matter of fact, all but 24.88 feet of the 157.31 feet [sic] depth of the property does front on the right of way.
As previously stated the measurements recited in the agreement were approximate or as per title. Only on the Clear-view Parkway side is there a deficiency of 7.87 feet, with the actual survey measurement being 157.13 feet rather than 165 feet. This shortage is too insignificant to justify the buyers’ receding from their contract to purchase, or demanding a diminution of the purchase price (Civil Code Articles 2491 and 2494).”
We think the trial judge was in error in not allowing defendants’ amended answer and the admission of parole testimony to show the intention of the parties and the error of fact which was shared by defendants and plaintiff’s agent Lopez. The testimony clearly indicates that Lopez thought the property lines extended to the corner of Sanford Street and the service road right-of-way. This is evident from the fact that he positioned Tanenbaum at that point from which to step off 165 feet. Furthermore Lopez testified:
“Q. Now, these lots which are referred to in the agreement, as Lots 13 and 14, are the remnants of the Lots left after the Interstate Expropriation took place; is that correct?
A. That’s correct.
Q. And the figure, 165 feet,-- was intended to refer to the frontage on the Interstate, Clearview side; is that correct?
A. That’s correct.
Q. And how was that figure arrived at; did you step that property off, sir?
A. We tried to step if off from the corner of Sanford and the service road, approximately, because we did not know the figure of one of the lots in question.
Q. Right. So 165 was your best guess at that time of how much property there was?
A. That’s correct.
Q. You weren’t really referring to any title at that time?
*747 A. No.
Q. You also did not know the extent, if any at all, of whether that Lot 15, that little piece of Lot 15, was still there; is that correct ?
A. That’s correct.”
Counsel for plaintiff attempted to distinguish the foregoing reference to frontage on the Interstate-Clearview side from frontage on the service road. We cannot accept this distinction. It is evident, we think, that Lopez, as well as Tanenbaum and Cohen, envisioned a plot of ground lying in the corner of Sanford Street and the service road with a lineal measurement of approximately 165 feet fronting on the service road. It was with this understanding, which later proved to be erroneous, that the offer to purchase was signed by defendants. No maps or surveys were shown, and defendants relied upon the representations of Lopez, made in good faith but in error, that the property described was the identical property they had visually inspected. The error was not discovered until the Walker survey was completed.
It is our opinion that the rejected parole testimony was admissible as an exception to the parole evidence rule to show want of consent resulting from error. LSA-C.C. art. 1819. The pertinent articles of the Civil Code on error are as follows:
“Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.”
“Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.”
The pertinent part of defendants’ amended answer, disallowed by the trial judge, but which is a part of the record before us on appeal, is as follows:
“That defendants have been informed by John E. Walker, Surveyor, whose survey is annexed to the original answer herein, that the frontage of this property on Interstate Highway 10 and Clearview Parkway is only 132.43 feet and not 157.31 feet as they had believed, whereas the property represented by plaintiffs to defendants was supposed to measure 165 feet on the Interstate Highway 10; that the property does not form the corner of Sanford Street and Clearview Parkway, but there is a remaining portion of property still owned by the State of Louisiana, Department of Highways. That therefore the object of the contract, that defendants were purchasing corner property measuring 165 feet fronting] on Clearview Parkway and Interstate Highway 10, has totally failed.”
This is clearly an allegation of error of fact sufficient to support the introduction of parole testimony. Harnischfeger Sale Corporation v. Sternberg, 179 La. 317, 154 So. 10 (1934); Campbell v. Cook, 151 La. 267, 91 So. 731 (1922); X-L Finance Company v. Humble, 186 So.2d 883 (La. App.lst Cir. 1966); Neck v. Neck, 169 So.2d 401 (La.App.3d Cir. 1964); Thompson v. Kivett & Reel, 25 So.2d 124 (La.App. 1st Cir. 1946); Hill v. Maguire, 19 La. App. 798, 140 So. 169 (2d Cir. 1932).
The variation of 7.69 feet in the lineal measurement of the Clearview Parkway service road side of the plot is of no serious consequence, particularly in view of the representation that the 165-foot measurement was an approximation. This alone would hardly be sufficient error to invalidate the agreement. It is of serious consequence, however, that the property tendered for sale was not in fact corner property.
With the location of the major highway interchange and service road that side of the property became the principal frontage, and for commercial purposes it is of major importance that it have an un *748 broken frontage abutting the service road. The existence of the small triangular tract lying immediately in the corner in another ownership is sufficient reason for defendants to refuse acceptance of the title tendered when it was understood between them and plaintiff’s agent Lopez that the tract described was corner property. The belief that the property had continuous frontage on the service road and was corner property were principal motives for making the contract.
There is no testimony that the parties specifically questioned Lopez as to whether the property was “corner property” or if they made this a specific requirement. This would have been a foolish question or unnecessary .declaration in view of the fact that the. property pointed out to them by Lopez was obviously corner property. It is evident from Lopez’ testimony that he did not know of the existence of the triangular parcel of Lot 15. We think he honestly thought he was offering corner property for sale. This was error of fact. Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954); Cheramie v. Stiles, 215 La. 682, 41 So.2d 502 (1949); C. H. Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App. Orleans 1958); McCarty v. Anderson, 58 So.2d 255 (La.App.1st Cir. 1952).
Plaintiff seeks to invoke the principle of law applicable to sales “Per Aver-sionem” citing LSA-C.C. arts. 854 and 2495. Neither the codal articles nor the cases cited by plaintiff are apposite to the factual situation in this case.
In Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321 (1942), cited by plaintiff, the parties entered into an agreement to purchase certain property “ * * * running thru square the grounds measuring approximately 120 x 205 [depth] or, as per title * * When a survey showed the property had a depth of only 165 feet, the Supreme Court nevertheless held the contract of sale valid, being a sale per aversionem, because the boundaries were clearly defined in the agreement as being from Jefferson Highway through the square to Harlem Avenue. Such is not the fact situation in this case.
In Hunley v. Ascani, 174 La. 712, 141 So. 385 (1932), also relied on by plaintiff, there was an agreement to sell and purchase a double cottage. The contract to sell read: “The double cottage Nos. 1728-1730 Seventh Street between Carondelet and Bar-onne, the ground measuring approximately 30' x 120', or as per title.” A subsequent survey revealed that the frontage on Seventh Street was only 26 feet 4 inches. In upholding this as a sale per aversionem the Supreme Court concluded that what the prospective purchasers had agreed to buy was the double cottage and the grounds thereon, i. e., their principal motive in entering into the agreement was the acquisition of the cottage, visually inspected in relationship to the lot boundaries, irrespective of the lineal measurement on Seventh Street. Thus, that case can be distinguished from the instant case because here we do not have a building that could be considered as the principal motive for the purchase of the property. The principal motive was the acquisition of a commercial corner lot abutting the service road.
The rule applied in determining if a sale is one per aversionem was stated by the Supreme Court in 1822 and has been applied consistently since. In Innis v. McCrum-min, 12 Mart.O.S. 425 (1822), the Court said:
“ * * * This is true, if the property sold is by certain bounds and limits, or is a distinct and separate object, as a field inclosed, or an island in a river; because it is presumed, that the object presented to view was that on which the parties formed their estimate * *
For later cases see: Heirs of Fulton v. Administrator of Curtis’s Estate, 4 La. 515 at 519 (1832); Fiske v. Fleming’s Syndic, 15 La. 202 (1840); Phelps v. Wilson, 16 La. 185 (1840); Harman’s Heirs v. O’Moran, 18 La. 526 (1841); Boyce v. Cage, 7 La. Ann. 672 (1852); State v. Buck, 46 La.Ann. 656, 15 So. 531 (1893), and other cases cited *749 at p. 535; Harries v. Harang, 23 So.2d 786 (La.App.lst Cir. 1945).
The contract of sale in this case does not meet the test for sales per aversionem. The only boundaries visible to the parties were the two paved streets forming a corner; therefore, it would appear that the defendants, rather than plaintiff, would benefit from the rule if it were applicable.
The contract of sale, being a nullity for want of consent resulting from the error of fact, makes it unnecessary that we discuss the other issues raised in defense. Defendants were not under obligation to accept the deed of conveyance tendered, and the forfeiture of their deposit of $4,500 must be set aside.
The defendants did not appeal the judgment dismissing their third-party petition against Medallion Realty, Inc., and their attempt to bring that issue before this court on appeal by answer to plaintiff’s appeal is of no effect. Medallion Realty, Inc., is not a party before this court on this appeal.
Moreover the deposit by defendants was made with Medallion in its capacity as “seller’s agent” therefore its principal, The Office Center, Inc., is answerable to defendants for its return. Since defendants did not reconvene against plaintiff for return of the deposit their right to seek its recovery from The Office Center, Inc., is not prejudiced by this suit.
It is not necessary to discuss the issue of realtor’s commission, which was one of the principal issues in the trial of this case below. For the reasons stated above the contract of sale was a nullity resulting from an error of fact, to which error the realtor was a prime contributor. Therefore, the realtor’s commission has not been earned and by whom its payment is due under the terms of the invalidated contract is moot.
The defendants did not appeal, but they did answer timely the appeal of plaintiff-appellant seeking a reversal of the judgment below in plaintiff’s favor, and there should be judgment accordingly.
For these reasons the judgment appealed is reversed and there is now judgment in favor of defendants Edwin Tanenbaum and Dr. Edgar C. Cohen and against plaintiff, The Office Center, Inc., rejecting plaintiff’s demands and dismissing its suit at its cost.
Reversed and judgment rendered.