99 So.2d 475 (1958)
C. H. BOEHMER SALES AGENCY
v.
Vincent RUSSO.
No. 20972.
Court of Appeal of Louisiana, Orleans.
January 6, 1958.
Rehearing Denied January 20, 1958.
Fishman, Rosenson, D'Aquin & Stich, New Orleans, for plaintiff-appellant.
Charles E. Cabibi, New Orleans, for defendant-appellee.
JANVIER, Judge.
Plaintiff partnership and the individual members thereof seek the return of $200 which they paid to defendant to secure from him an option to purchase a piece of real estate in New Orleans. They allege that when they entered into the option agreement they labored under an error of fact concerning the principal cause of the contract believing that the zoning status of the property was such that it could be used for the purpose for which they desired it; that defendant was aware of the true fact, that is could not be so used, and failed to disclose it, and they also allege that when they discovered the true fact, they called upon defendant to refund the amount which they had paid him, and that, though he agreed to make the refund, he has failed to do so.
Defendant, admitting the execution of the option agreement, denies the remaining allegations of the petition.
From a judgment dismissing the suit, plaintiff has appealed.
The plaintiff partnership, C. H. Boehmer Sales Agency, having been informed by its then landlord that, at the expiration of its lease, it could not be renewed as the said landlord himself would require the space, in looking for a new location, learned that the defendant, Vincent Russo, was the owner of a piece of real estate, No. 4400 Bienville Street, which he desired to sell and which was apparently suitable for the purpose of the partnership.
On the property there was a building and equipment which had been in use as an automobile service station but which, at the time, was vacant.
*476 On Saturday, April 7, 1956 (and it is of some importance that it be noted that this was a Saturday) two members of the plaintiff partnership, William C. Boehmer and Richard H. Boehmer, with Clifford A. Dumestre, employed by the partnership apparently as office manager, called on Russo and with him inspected the property which he was offering for sale.
The property in an area which was not zoned for commercial or industrial use, had been in use as an automobile service station before the zoning laws became effective and therefore its use for that purpose was permitted and it was classified as "Industrial Non-conforming," which meant that its use as a service station could continue, but that its character as such could not be substantially changed for commercial or industrial purposes and that the size of the building could not be increased. It also meant that should its use as a service station be discontinued for a period of six months, it would lose its status as commercial or industrial "non-conforming" and thereafter could be used as a location for residential structures only.
There is no doubt that the building, which was on the property as it was at that time, could not have satisfied the needs of the plaintiff partnership and there is equally no doubt that under its zoning classification the necessary additions to the building would not have been permitted.
The controversy hinges on the questions of whether the partnership knew or should have known of the zoning status of the property; on the further question of whether defendant, Russo, disclosed the exact status of the property, and on the additional question of whether, if he did not disclose it, he was under any obligation to do so.
There is also presented the question of whether, if Russo was under no such obligation, the plaintiff partnership was under the obligation of itself discovering the exact status of the property before purchasing the option to buy it.
That the Boehmer brothers and Mr. Dumestre made known to Russo the fact that there must be an enlargement of the then existing building is made evident, not only by their own testimony that they told Russo what they would have to do, but also by the testimony of Russo himself who said that: "They wanted to enlarge the property for more space." He was asked: "Did you not understand from them that they couldn't use it without making some alterations and changes?" He answered: "Yes, sir, they said they wanted to make some changes." Although Russo said that he had not discussed with Boehmer the question of `extending the building out," he heard such a discussion which "was between those three (3) men." All of this makes it evident that since the property was zoned as commercial or industrial "non-conforming", Russo should have realized that it would not be suitable for the plaintiff partnership unless a relaxation of the zoning classification could be obtained.
Mr. William Boehmer and Mr. Dumestre are positive that Mr. Russo told them the property was zoned "heavy commercial" and that he said nothing about the fact that it was "non-conforming." These witnesses stated that they were positive that Russo said this and that, as evidence of this fact, he pointed to an industrial establishment, an iron works, across the street, and "cited" the iron works "as an example that anything at all could be erected on that (his) property."
Mr. Richard H. Boehmer was not placed on the witness stand, but it was stipulated that, had he testified, his testimony would have been the same as that given by his brother.
In view of the fact that the property was then occupied by a commercial establishment, and in view of the fact that Russo knew the purpose for which the plaintiff partnership proposed to use the property and that he was either told or knew from their conversation that it would be necessary to enlarge the building, our conclusion *477 is that there was a duty in Russo to clearly make known to them the exact status of the property.
If we are in error in our conclusion on this point, we are quite sure that we are not in error in concluding that the Boehmers labored under an error of fact concerning the principal cause for the making of the contract, since it is very evident that they would not have been interested at all had they known that the property could not be used for the purpose intended by them. Surely if they had known that they could not use the property they would not have paid $200 to secure an option to purchase it.
That certain errors of fact invalidate a contract is evident, since Articles 1820 et seq. of our LSA-Civil Code so provide. In Article 1823 we see that "* * * To have that effect, the error must be in some point, which was a principal cause for making the contract, * * *."
The principal cause for the making of this contract was the desire to use it for that certain purpose. That such an error of fact in such a situation authorizes the cancellation of a contract was held by our Supreme Court in Carpenter v. Skinner, 224 La. 848, 71 So.2d 133, 136. There the Supreme Court affirmed a judgment which relieved a prospective vendee of the obligation of carrying out a contract to buy real estate since he, a white person, intended to use it for a residence and discovered that it was located in a Negro neighborhood. The Court made the following statement:
"We do not believe that the law imposed the duty on the Skinners to examine City records or those of some public Board of Health or corporation or bureau, nor should they have had to pull or push bells in the neighborhood to determine the color of their prospective neighbors. The information could not have been readily ascertained by ordinary inspection. * * *"
Under the circumstances shown here, there was no duty in the prospective purchasers to discover the status of the property. So far as could be ascertained from looking at it, they were justified in assuming that it was zoned for the purpose for which it was being used.
It may be that if a prospective purchaser buys a piece of property which he desires to use for commercial purposes and it is obviously in a residential neighborhood, the duty is on him to first ascertain whether he can so use it, and if he makes an offer to purchase or purchases an option, under such circumstances, it may well be that it should be held that he should be bound by his offer, but where, as here, the use to which the property is being put justifies the belief that it is zoned unconditionally for such use, he may be relieved of his obligation on later discovering that it cannot be used by him for the purpose intended.
It is argued on behalf of defendant that the purpose of the plaintiff in purchasing the option was to give them an opportunity to ascertain the true zoning status. The record justifies the conclusion that this is not so. The transaction was commenced and completed on a Saturday and the Boehmer brothers had to leave for a visit to New York on that afternoon and were not sure whether the property was suitable for their purpose, not because of its zoning status, but because of its location.
They were willing to pay $22,500 for the property if they found that it suited their purpose and they were willing to deposit the $200 to obtain the 15-day option so that they might complete their visit to New York and, on their return, decide whether they desired to exercise the option. We are certain that, had they known that they could not use it, they would not have purchased the option in the first instance.
In Oatis v. Delcuze, 226 La. 751, 77 So.2d 28, the Supreme Court considered a situation to some extent similar to that which *478 is presented here, and reached the conclusion that since, because of zoning regulations, the property might not have been used for the purpose intended and litigation might have been required, the prospective purchaser was not bound by his agreement to purchase.
The plaintiff partnership is entitled to the return of its deposit with legal interest from judicial demand until paid.
For the reasons assigned, the judgment appealed from is reversed and there is now judgment as prayed in favor of plaintiff, C. H. Boehmer Sales Agency, and against defendant, Vincent Russo, in the sum of $200, with legal interest from judicial demand; all at the cost of appellee.
Reversed.