959 So.2d 521 (2007)
DCDB MANAGEMENT, L.L.C.
v.
Dorian M. BENNETT, et al.
No. 2005-CA-1084.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2007.
Opinion Granting Rehearing May 23, 2007.
James M. Garner, Timothy B. Francis, Lauren L. Hudson, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., New Orleans, Louisiana, for Plaintiff/Appellee.
Salvador Anzelmo, Michael J. Laughlin, Metairie, Louisiana, for Defendant/Appellant, Pamela A. Fortner.
(Court composed of Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
JAMES F. McKAY III, Judge.
The appellant, Dorian M. Bennett, appeals the trial court's judgment granting summary judgment on behalf of the appellee, DCDB Management, L.L.C., ("DCDB"). For the reasons set forth below we affirm.

FACTS AND PROCEDURAL HISTORY
This matter comes before this Court pursuant to a suit for rescission of the sale of an immovable property designated as 2446/2248 Royal Street. The trial court granted the appellee's motion for summary judgment and ordered the seller to return the purchase price of $450,000.00 plus legal interest.
On July 31, 2003, David J. Erath submitted a written signed offer to purchase the property "subject to title and zoning restrictions, servitudes of record, and laws or ordinances" to the seller, Pamela A. Fortner. Pursuant to this offer and acceptance Ms. Fortner subsequently executed, as seller, an act of cash sale of the property to DCDB, which was substituted for David J. Erath as the purchaser. The appellant listed the property as "six units of record, *522 currently used as a 5-plex." It was further advertised that the "[u]nits will be able to produce strong rental revenue with some interior redecoration work." Based upon the representations of the seller, the appellee purchased the Royal Street property for the sum of four hundred fifty thousand dollars ($450,000) on August 27, 2003.[1] After the purchase of the property, the appellee obtained the necessary permits from the City of New Orleans and began to renovate the property. Soon thereafter, neighbors filed objections with the Department of Safety and Permits ("DPS") on the basis that the six-condominium project was a nonconforming use of the property not permitted at that location. On November 5, 2003, DPS advised the appellee that, as of November 4, 2003, the building permits for the Royal Street property were rescinded, having been issued in error, and that the property had lost its nonconforming use status. Consequently, the Royal Street property could only be used as a single or double family dwelling. In reaction, the appellee filed this suit moving the court to rescind the August 27, 2003 sale.
The appellee urged the trial court to grant a summary judgment in the matter on the grounds that error concerning the cause of the obligation vitiated appellee's consent, contending that it would not have purchased the property had it known it could not be sold for multiple units.
The trial court in its reasons for judgment held the following:
Thus, the Court concludes that the principal cause of the contract between plaintiff, DCDB, as buyer, and defendant, Pamela Fortner, as seller of the Royal Street property was the sale of the condominium units. La. C.C. art. 1949. La. C.C. art. 1950 provides that error may concern cause when it bears on a substantial quality of a thing that is the contractual object. Pursuant to La. C.C. art 1949 error vitiates consent when it concerns a cause, without which the obligation would not have incurred and which was known or should have been known to the other party. Thus, plaintiff's Motion for Summary Judgment is granted.
In granting the summary judgment the trial court ordered that the sale of the immovable property on Royal Street be rescinded and ordered the seller to return the purchase price to the purchaser, plus legal interest from the date of judicial demand until paid. The trial court also ordered that each party bear its own cost. We agree with the judgment of the trial court.
ASSIGNMENT OF ERROR
The appellant raises one assignment of error, arguing that the trial court erred in granting the motion for summary judgment asserting that there are genuine issues of material fact in dispute and that DCDB is not entitled to judgment as a matter of law.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. "Favored in Louisiana, the summary judgment procedure `is designed to secure the just, speedy, and inexpensive determination of every action' and shall be construed to accomplish these ends." King v. Parish National Bank, XXXX-XXXX, *523 p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)).
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Alexis v. Southwood Ltd. Partnership, XXXX-XXXX, p. 3 (La.App. 4 Cir. 7/18/01), 792 So.2d 100, 102. The burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
DISCUSSION
We begin our analysis of the applicable Louisiana law with the basic propositions set forth in La. C.C. art. 1983: "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." The requisite consent for an enforceable contract may be vitiated by error on the part of one or both parties to the contract, La. C.C. art 1948; La. C.C. art. 1948 specifically states that contractual consent may be vitiated "by error, fraud, or duress." Error sufficient to vitiate consent is described by La. C.C. art. 1949 and 1950 as follows:
Art. 1949. Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art. 1950. Error that concerns cause
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
In the instant matter the error concerns a cause without which the appellee would not have purchased the Royal Street property: that is the ability of the property to be renovated and potentially sold as a multi-family dwelling. The buyer erroneously believed that the property could be used as a multi-family property. The buyer contends that he would not have purchased the property had it been known that multi-family dwelling designation was inaccurate, in fact false.
The record before us indicates that all parties involved believed that the property was in conformity with zoning regulations and could be converted and used for the purpose of a six-unit multi-family dwelling.
On August 27, 2003, the seller's agent was Rita M. Cabes; the buyer's agent was Dorian M. Bennett, both worked at Dorian M. Bennett, Inc., ("agency"). The agency listed the Royal Street property as "six units of record, currently used as a 5-plex." The advertisement further states that the "[u]nits will be able to produce a strong rental revenue with some interior redecoration work." Dorian M. Bennett represented to the buyer that the Royal Street property's conversion to condominium units had already begun and considerable progress had been made. It was upon these assertions that David J. Erath agreed to purchase the property. In the *524 portion of the June 7, 2004 deposition of Dorian M. Bennett, which is in the record before us, Ms. Bennett testified that:
Question. Isn't it true at some point during negotiations for the sale of the Royal Street Property that Mr. Erath informed you that he was interested in buying the Royal Street Property only if it could be converted to six condominium units?
Answer. Yes.
Question. And isn't it true that you told him that it could, in fact, be converted into six units or that it was six units?
Answer. Yes, to my belief, yes.
Question. And you told him this before the sale, correct?
Answer. Yes.
Question. And on what basis did you make that representation?
Answer. Based upon what I knew of that property.
Question And that was?
Answer. That there were six meters on the property, six bathrooms, six kitchens. It is a 6-plex as long as I have known the property.
Clearly, Ms. Bennett knew that the appellee did not want to purchase the property unless the property could be converted into multiple condominiums for resale.
In the portion of the September 9, 2004 deposition of Ms. Cabes, which is in the record before us, Ms. Cabes similarly testified as to the belief in the multi-unit purpose of the Royal Street property.
The seller, Ms. Fortner, as referenced in the portions of the deposition in the record before us, testified in her September 27, 2004 deposition that she was of the same belief that the property could have been used for five units.
As noted above, after the purchase of the property the appellee obtained the necessary permits from the DPS for the City of New Orleans and began renovating the Royal Street property. Neighbors contending that the construction was nonconforming with the zoning for the area filed objections to the renovations with the DPS. As a consequence of this complaint, the DPS rescinded the permit on November 4, 2003, stating that the permit had been issued in error. As such, the property could only be used for a single or a double family dwelling potentially causing significant financial loss to the appellee.
The appellant asserts that the original cash sale was made "without all legal warranties except as to title" and with no warranty or representation as to any zoning classification or permitted uses of the property. She also asserts neither the appellee nor David J. Erath nor any one else at any time prior to the sale of the property communicate to Ms. Fortner that any particular zoning classification or permitted use of the property was a necessary condition of the sale or a principal cause for the purchase of the property. Therefore, the appellant argues that she was not placed on notice to investigate and determine such legal conditions and was not afforded the opportunity to decline David Erath's offer to purchase and/or the sale of the property to DCDB if those legal conditions were not present.
The appellant also agues that the zoning issue is not a defect or vice to successfully forward a redhibition claim. For authority the appellant sites Louviere v. Meteye, 260 So.2d 377 (La.App. 4 Cir.1972). The Louviere case is in certain aspects very similar to the instant matter except for a very important issue. In Louviere, the purchaser purchased the property for a commercial purpose, only to discover that the land in question was zoned for residential. The trial court rescinded the sale because at the time of the purchase the purchaser *525 believed the property to be zoned commercially. The defendant in Louviere believed that the articles on redhibition, La. C.C. art. 2520 et seq., governed the action, which was specifically pled. The appellate court in Louviere held that this matter did not lie in redhibition.
Defendant contends that this action is governed by the articles of the Louisiana Civil Code which concern redhibition, LSA-C.C., Articles 2520 et seq., and that the prescriptive period of one year must apply and plaintiff's suit be dismissed. We do not agree. In order for redhibition to apply there must be a vice or defect in the thing sold which renders it useless, or so inconvenient and imperfect that it is presumed that the buyer would not have purchased it if the vice or defect was known, (LSA-C.C. Article 2520), the essential element being a vice or defect in the object sold. The fact that the property was not zoned as the buyer wanted is not a defect or vice within the meaning intended by the articles of redhibition. The parties to the present suit were laboring under a mistake or error that more properly gives rise to rescission under LSA-C.C., Articles 1821, et seq.
For an error to invalidate a contract it must be interrelated to the principal cause for making the contract. LSA-C.C. Article 1823. The principal cause for making this contract for the sale of land was the desire to use it for commercial purposes. Plaintiff's sole reason for purchasing this land was for the development of a commercial enterprise. Clearly indicative of this is the condition written in the agreement to sell that the property be zoned `C-2 Commercial'.
Where the vendee labors under an error fact as to the mistaken belief of a property's zoning restriction and that such belief being a principal cause of the sale is justifiable in relation to the circumstances surrounding the case, then rescission of the contract may be obtained. C.H. Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App.Orleans, 1958); Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954).
The basis for the affirmation of the trial court judgment rescinding the sale in Louviere, was not that there was a vice or defect but a clear error concerning the zoning of the property. This Court was cognizant of that evaluation and affirmed the trial court. Herein lie the similarities to the instant matter. The trial court in its reasons for judgment indicated that the sale was rescinded because of error. This error invalidates the contract as in Louviere.
We draw the same conclusion as did the trial court. There were none of the requisite elements to support the validity of the contract. Error vitiated the consent of the parties. There is no need to examine any redhibition claims nor is it necessary to explore any issues concerning any alleged waivers of warranty because error vitiated consent thereby invalidating the contract.
Although, the appellant argues that there are genuine issues of material fact in question, there is no dispute in the determinative factor, that the buyer would not have purchased the property if it could not have been used as a multi-family dwelling. Ms. Bennett, Ms. Cabes and the seller, Ms. Fortner, all testified that they believed that the property could have been used as a multi-family dwelling. Even the DSP believed the property could have been used as a multi-family dwelling and it issued permits for the renovation work. Furthermore, the property had six bedrooms, six bathrooms, six kitchens and six electric meters. The appellant also advertised that the property could be used as five or six units.
*526 Finally, the appellant failed to offer any evidence to overcome the summary judgment pertaining to the cause of the obligation. The purpose was to purchase a property that could be used as a multi-family dwelling. This was clearly not a unilateral error but at the very least a bilateral error sufficient to vitiate consent
Conversely, the appellee has met its burden of proof that all of the parties involved were under the same erroneous belief that the property could be used a multi-family dwelling. It was this error that concerns the cause of the obligation resulting is lack of valid consent as a matter of law rendering the contract null and void. Therefore, the entire sale is void as are any of the provisions in the sale documents related to the waiver of warranty or zoning.
Accordingly, for the above and foregoing reasons we affirm the judgment of the trial court granting the motion for summary judgment and affirm its judgment rescinding the sale. All costs of appeal are taxed equally to the parties.
AFFIRMED.

ON APPLICATION FOR REHEARING
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS JR.).
MAX N. TOBIAS, Jr., Judge.
We grant the application for rehearing of the defendant/appellant, Pamela A. Fortner, to consider whether we erred in affirming the trial court's judgment sustaining the motion for summary judgment of the plaintiff/appellee, DCDB Management, L.L.C. ("DCDB"). Our standard for review, as we pointed out in our original opinion, is de novo review.
In her application for rehearing, to which DCDB filed a response, Ms. Fortner asserts that this court erred in concluding that the principal cause of the contract (the Agreement to Purchase or Sell) between DCDB and Ms. Fortner was DCDB's ability to convert the Royal Street property to five or six condominium units for sale as such. A further review of the record on appeal, however, discloses that whereas a principal cause, and possibly the principal cause, for DCDB's acquiring the subject property was for a condominium conversion to five or six units, Ms. Fortner had no other purpose to sell the subject property other than to get out of ownership of the property. Once her nephew, who had formerly occupied the premises and managed them as a bed and breakfast, moved, leaving the premises to her management, Ms. Fortner no longer desired to own the premises. Ms. Fortner persuasively argues in her application for rehearing that the conversion of the property to a multi-unit dwelling was not the principal cause for her sale of the subject property and whether DCDB's desire to so convert the premises creates a genuine issue of material fact.
Moreover, the Agreement to Purchase or Sell ("the Agreement") executed by the parties contains language that the purchaser, DCDB, accepted the property "subject to . . . zoning restrictions . . . and laws and ordinances." The parties attached as an addendum to the Agreement a property disclosure statement. In pertinent part in the addendum, the question is asked: "10. Does the property and its current usage conflict with current zoning, title, building and safety restriction or ordinances?" Ms. Fortner answered the question "No." She signed the addendum attesting that the answer given was "TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE." (Emphasis in original.) The purchaser signed the *527 addendum making it a part of the Agreement. The purchaser's signing of the Agreement did not relieve it of the obligation to reasonably investigate the zoning restrictions on the property in spite of the representations in Rita M. Cabes'[1] flyer about the premises and the representations of Ms. Fortner in the addendum. Although error may have existed (La. C.C. arts. 1948, 1949, and 1950) as to principal cause, the issue of "principal cause" requires a more complicated, detailed factual analysis than the documentation submitted both for and against the motion for summary judgment before us establishes. We find sufficient conflict in the documentation that creates a genuine issue of material fact that precludes the granting of a summary judgment for the present.[2]
Ms. Fortner's agent represented and thus clearly implied through a flyer that the subject property was a five-plex and possibly implying that it was being so operated in accordance with zoning ordinances. Ms. Fortner represented that the property to the best of her knowledge complied with all zoning ordinance.
Summary judgments are now favored in our law. La. C.C.P. art. 966 A(2). We note that the motion summary judgment of DCDB sought relief in two respects: first, it sought recession of the sale; second it sought a return of the purchase price (i.e., $450,000.00). The trial court granted DCDB the relief it requested: recession of the sale and refund of the full purchase price plus judicial interest. The trial court further declared the judgment final, appealable, and without justifiable reason for delay of the appeal pursuant to La. C.C.P. art. 1915.
In oral argument, DCDB's and Ms. Fortner's attorneys alluded to the judgment having been amended on motion for new trial to delete that portion of the judgment ordering that Ms. Fortner refund the purchase price plus judicial interest. Neither the purported motion nor the purported amended/ new judgment forms part of the record on appeal. Moreover, the record reflects that a motion for suspensive appeal from that original judgment was filed on 11 May 2005, nine days after the judgment was rendered on 2 May 2005, and five days after notice of judgment was issued on 6 May 2005. The order granting the suspensive appeal was signed on 11 May 2005 and a suspensive appeal bond filed. The trial court was divested of jurisdiction of all matters addressed in the judgment when the order of appeal was granted. La. C.C.P. art 2088.
Although DCDB's executive officer's (David J. Erath) documentation submitted in support of the motion established that DCDB wanted the premises for a condominium conversion, Ms. Fortner's documentation established that she did not personally represent to the plaintiff anything regarding the zoning or what the premises could be used for or as. This may be inaccurate in view of the addendum to the Agreement. Nevertheless and in addition, she may also be bound by the representations of her mandatary (real estate agent).
*528 Under the facts of this case and the physical record on appeal that is filed in this court and by which we are bound, we find that the judgment granting the motion for summary judgment, ordering Ms. Fortner to return the purchase price paid by DCDB plus judicial interest, must be vacated. DCDB's petition as amended seeks additional damages from Ms. Fortner in the form of "all expenses occasioned to [it] by the purchase. . . ." We find that vacating the trial court's judgment in its entirety and remanding for a resolution of all issues serves the purposes of justice. La. C.C.P. art. 2164. Resolution of all issues should await a trial on the merits, or, if appropriate, by further documentation submitted on future motions for summary judgment. To proceed by other than vacating the trial court's 2 May 2005 judgment and remanding will result in piecemeal adjudications of the various issues in this case.[3]
Therefore, we vacate our former judgment affirming the trial court's judgment granting the plaintiff's motion for summary judgment. We reverse the trial court's judgment sustaining DCDB's motion for summary judgment and remand the matter for further proceedings.
REHEARING GRANTED; PRIOR JUDGMENT VACATED; JUDGMENT REVERSED; REMANDED.
MURRAY, J., Concurs and Assigns Reasons.
LOVE, J., Concurs with Reasons.
JONES, J., Dissents for Reasons Assigned by Judge McKAY.
McKAY, J., Dissents with Reasons.
MURRAY, J., Concurring.
I agree with the result reached by the majority on rehearing. In addition to the genuine issues of fact pointed out by the majority, I find that DCDB put forth insufficient evidence regarding the zoning issue. The documentation put forth in support of the motion for summary judgment does not reveal the reason the property lost the nonconforming use status it had when Ms. Fortner was the owner and it was being operated as a five-plex. Moreover, the documentation does not reflect exactly how many units are permitted without that status. Finally, there is no indication as to whether DCDB attempted to appeal the loss of the nonconforming use status, whether the decision could have been appealed, or whether the appeal process had been exhausted. Considering these outstanding issues of material fact, I agree that the summary judgment was improperly granted. Accordingly, I respectfully concur in the result.
LOVE, J., Concurring.
I concur with the majority in granting the application for rehearing for the sole reason that I find that the alleged error as to the cause of the contract of sale for Ms. Fortner's property is inappropriate for summary judgment. A genuine issue of material fact exists as to what constituted the principal cause for the contract of sale.
McKAY, J., Dissenting.
I respectfully dissent from the majority opinion on rehearing. I would maintain the result of the original majority opinion.
NOTES
[1] It is undisputed in the record that all parties assumed that this property was a multi-family dwelling.
[1] Ms. McCabe's was Ms. Fortner's real estate agent.
[2] We note that the liability, if any, of Dorian M. Bennett, Inc., Rita M. Cabes, and Dorian M. Bennett individually may affect the overall outcome of this case and who owes what to whom. A mandatary may be responsible to his principal for any wrongful acts or inaccurate misrepresentations. Whether a real estate agent's actions and representations, under Louisiana's laws on mandate, makes the agent partially or totally responsible for a party's damages is a genuine issue of material fact that needs to be fleshed out in the context of the case at bar. See La. C.C. arts. 2995, 3000, 3001, 3007, 3010, 3011, 3013, 3019 and 3021.
[3] We find the trial court improvidently designated the judgment as immediately appealable in light of the additional claims of DCDB, the claims of Ms. Fortner, and the claims against the real estate agents.